IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BOBBY O.,[1] | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:23-CV-02735-L-BV |
| | § | |
| MICHELLE KING, | § | |
| Acting Commissioner of Social Security, | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Bobby O. seeks judicial review of the Commissioner's decision denying his applications for disability benefits under the Social Security Act (SSA).[2] Dkt. No. 1. He alleges two errors in the decision-making below: (1) that the administrative law judge (ALJ) improperly based the Plaintiff's physical residual functional capacity on the ALJ's own interpretation of the medical evidence, and (2) the ALJ failed to identify a significant number of unarmed security guard jobs in the national economy. Dkt. No. 12 at 5, 9. After considering the pleadings, briefs, administrative record, and applicable legal authorities, the undersigned magistrate judge agrees with the second point of error and recommends that United States District Judge Sam A. Lindsay **REVERSE** the Commissioner's decision and **REMAND** this action for further administrative proceedings consistent with this recommendation.

---

[1] To protect his privacy, Plaintiff is identified only by first name and last initial.

[2] In accordance with *Special Order 3-350* and 28 U.S.C. § 636(b), this case was automatically referred to the undersigned magistrate judge, but because not all parties have consented to the magistrate judge, the undersigned files this report to the United States District Judge. *See* Dkt. No. 15.

## 1. Statement of the Case

Plaintiff seeks disability benefits under Titles II and XVI of the SSA. Dkt. No. 8-1 at 18. He applied for disability insurance benefits and supplemental security income on July 14, 2021. *Id.* His application reported disability based on, among other things, type II diabetes mellitus, degenerative disc disease of the cervical spine, and left shoulder impingement. *Id.* at 21. The Commissioner denied the application initially and on reconsideration, so Plaintiff requested a hearing before an ALJ. *Id.* at 18. ALJ James L. Bentley conducted a telephone hearing, during which Plaintiff testified. *Id.* A vocational expert also testified. *Id.*

The ALJ affirmed the Commissioner's decision. Dkt. No. 8-1 at 29. The Appeals Council denied further administrative review. *See id.* at 1. Plaintiff then filed this action seeking judicial review under 42 U.S.C. § 405(g). Dkt. No. 1. As a result of the denial, the ALJ's decision became the Commissioner's final decision and is properly before this Court. *Sims v. Apfel*, 530 U.S. 103, 107 (2000); *see also Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005) (holding that the Commissioner's final decision necessarily incorporates the Appeals Council's denial of a claimant's request for review).

## 2. Standard of Review

A court reviewing the Commissioner's denial of social security benefits is limited to determining whether: (1) the decision is supported by substantial evidence in the record; and (2) the Commissioner applied the proper legal standards. *See* 42 U.S.C. § 405(g) (2012); *see, e.g., Higginbotham*, 405 F.3d at 335. "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (per curiam). A reviewing court must examine the entire record, including evidence favorable to the Commissioner as well as contrary evidence. *See Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). The court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's]." *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) (per curiam) (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (per curiam)). If substantial evidence supports the Commissioner's findings, they are treated as conclusive and will be affirmed. 42 U.S.C. § 405(g) (2012); *Richardson v. Perales*, 402 U.S. 389, 390 (1971).

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner makes a disability determination by conducting a five-step, sequential evaluation to determine whether: (1) the claimant is currently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in Appendix 1 of the regulations; (4) the claimant is capable of performing past relevant work; and (5) the claimant, after taking into account age, education, previous work experience, and residual functional capacity, is capable of performing any other work. 20 C.F.R. § 404.1520(a)(4) (2016); *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007). If the Commissioner makes a

disability determination at any step in the process, the finding is conclusive, and the analysis terminates. *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

The claimant bears the burden of proof in the first four steps of the analysis. *Id.* If the claimant can satisfy that burden, the Commissioner must then demonstrate that the claimant is capable of performing other work that exists in significant numbers in the national economy. *Id.* After making such a showing, the burden shifts back to the claimant to rebut the Commissioner's finding. *See Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

### 3. Factual Background

Plaintiff previously worked as security personnel at a county government office. Dkt. No. 12 at 7. He alleges that he became disabled on March 26, 2021, due to diabetes.[3] *Id.* at 6.

The ALJ completed the five-step evaluation process. Dkt. No. 8-1 at 18–28. First, the ALJ found that Plaintiff has not engaged in substantial gainful activity since March 26, 2021. *Id.* at 21. Second, the ALJ found four medically severe impairments: degenerative disc disease of cervical spine with history of anterior discectomy fusion with hardware placement; cervical ankylosis; left shoulder impingement; and type II diabetes mellitus. *Id.* Third, the ALJ identified no impairment or combination of impairments that qualify under the federal regulatory list. *Id.* at 22. He then assessed Plaintiff's residual functional capacity:

---

[3] Plaintiff's initial applications reported an onset date of December 31, 2019, but he later amended the date. Dkt. No. 8-1 at 18.

4

> [C]laimant has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except frequent climbing of stairs and ramps, occasional climbing of ladders and scaffolding, frequent stooping, kneeling, crouching, and occasional crawling, only occasional overhead reaching with the left upper extremity, and avoidance of unprotected heights and dangerous moving machinery.

*Id.* at 23. Using this determination and after hearing testimony from the vocational expert, the ALJ determined at step four that Plaintiff is unable to perform past relevant work as a police officer, which was the closest vocational match to his prior work as a skilled security guard. *Id.* at 27. But considering Plaintiff's age, education, work experience, residual functional capacity, and the vocational expert's testimony, the ALJ determined that Plaintiff "has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy[.]" Dkt. No. 8-1 at 27. Specifically, the ALJ determined that Plaintiff can perform the duties of an "Unarmed Security Guard (light exertion, SVP 3)." *Id.* at 28.

Plaintiff challenges the ALJ's determinations regarding his residual functional capacity and whether the job of a light-duty, unarmed security guard is one that exists in sufficient numbers in the national economy. *See* Dkt. No. 12 at 5–14.

4. **Analysis**

### A. The ALJ's determination regarding Plaintiff's physical residual functional capacity is supported by substantial evidence.

Plaintiff argues that there was not substantial evidence in the record to support the ALJ's determination regarding his physical residual functional capacity. Dkt. No. 12 at 9–13. In Plaintiff's view, the ALJ erred by failing to adequately develop the record regarding Plaintiff's limitations and improperly crafted a physical residual functional

5

capacity based solely on the ALJ's interpretation of the medical evidence. *Id.* at 11. Plaintiff observes that the ALJ relied on the opinions of the state agency medical consultants, finding them "reasonably persuasive." *Id.* at 10–11; *see also* Dkt. No. 8-1 at 27. But since Plaintiff believes that the ALJ did not "fully credit" the opinions of those consultants, the ALJ purportedly "was left with nothing to rely on other than stale and uninformed assessments" of Plaintiff's physical residual functional capacity. Dkt. No. 12 at 11.[4] That, according to Plaintiff, led the ALJ to improperly determine that Plaintiff was more limited than what the state agency medical consultants believed. *Id.* at 11–12. Plaintiff argues that "[w]hile the ALJ may choose to reject the [consultants'] opinions, he cannot then independently decide the effects of Plaintiff's . . . impairments on [his] ability to work, as that is expressly prohibited[.]" Dkt. No. 14 at 1–2 (quoting *Lagrone v. Colvin*, No. 4:12–CV–792–Y, 2013 WL 6157164, at *6 (N.D. Tex. Nov. 22, 2013)). Instead, Plaintiff asserts "[t]he ALJ could have ordered an agency consultive examination or scheduled a medical expert to testify regarding the extent of the limitations resulting from Plaintiff's established physical impairments." Dkt. No. 12 at 11.

In support of his position, Plaintiff relies primarily on Judge O'Connor's decision in *Kirkland*. *Id.* (citing *Kirkland v. Comm'r of Soc. Sec.*, No. 4:22-cv-759-O-BP, 2023 WL 3357597, at *3 (N.D. Tex. Apr. 25, 2023), *R. & R. adopted by* 2023 WL 3362633 (N.D. Tex. May 10, 2023)). There, the magistrate judge recommended reversal because

---

[4] "The Social Security regulations impose no limit on how much time may pass between a [state agency consultant's] report and the ALJ's decision in reliance on it[,]" as "there is always some time lapse between the consultant's report and the ALJ hearing and decision." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). Plaintiff's suggestion that the ALJ could not rely on the opinions of the state agency consultants based on the date of their reports is meritless.

6

the ALJ found the state agency consultants' opinions "only somewhat persuasive" and adopted additional limitations before determining that the plaintiff was not disabled. *Kirkland*, 2023 WL 3357597, at *3. The court determined that the additional limitations were not based on a medical opinion but were instead a "lay interpretation of the raw medical data[,]" even where the additional limitations gave the plaintiff "more limitations than otherwise would have been required." *Id.* at *5.

This case differs from *Kirkland* in significant ways. First, here, the ALJ did not reject the state agency consultants' medical opinions and instead adopted them, finding them "reasonably persuasive." Dkt. No. 8-1 at 27. Second, although the ALJ slightly tweaked the physical residual functional capacity by including a reaching restriction, that restriction was added to accommodate Plaintiff's continued shoulder impingement, which was well-documented in the medical record and testified to by Plaintiff at the hearing. *See* Dkt. No. 8-1 at 25–26 (describing Plaintiff's post-operative report of "left shoulder pain [indicative of] internal impingement of the left shoulder" and subsequent treatment records documenting continued "impingement of the left shoulder"); *see also id.* at 42–44, 52 (Plaintiff's testimony that he continues to suffer from left shoulder plain and cannot lift overhead with his left arm or reach to put items away and explaining that, just sitting there, his shoulder does not hurt, but once he tries to use his left arm "that aggravates it to where it does hurt"). Thus, contrary to a situation where "the record did not clearly establish the effect the claimant's condition on his ability to work[,]" *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995), the record in this case—including the medical documentation explaining the left-shoulder impingement—sufficiently established

7

Plaintiff's limitations. *See Cornett v. Astrue*, 261 F. App'x 644, 649 (5th Cir. 2008) (per curiam) (explaining that "the lack of a statement from [a doctor] as to what [a claimant] could still do in spite of his impairments does not automatically render his report incomplete" and "only when the available evidence is inadequate to determine if there is a disability" does the need for the ALJ to obtain additional medical evidence arise).

"Nothing in the record suggests the ALJ needed additional medical information to reach an informed decision about whether Plaintiff was disabled." *Ruthie L.G. v. Comm'r of Soc. Sec. Admin.*, No. 3:22-CV-2585-BK, 2024 WL 731940, at *4 (N.D. Tex. Feb. 21, 2024). "It is difficult to characterize such an extensive record as inadequate." *Cornett*, 261 F. App'x at 649; *see, e.g., Webster v. Kijakazi*, 19 F.4th 715, 720 (5th Cir. 2021) (finding the record was sufficiently developed with medical records, opinions from state agency medical consultants, findings from doctors, and testimony from plaintiff's wife and mother). Here, as in the cases cited, there was substantial evidence in the record forming the basis of the ALJ's determination regarding Plaintiff's residual functional capacity.

But even if the Court were to agree "that the ALJ committed a *Ripley* error, reversal requires a showing of prejudice[.]" *Vasquez v. O'Malley*, No. 24-50233, 2024 WL 4381269, at *2 (5th Cir. Oct. 3, 2024). "To establish prejudice, a claimant must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (internal quotation marks and citation omitted). Plaintiff has not done so here. He simply argues that the ALJ's failure to further develop the medical record casts doubt on whether there is substantial evidence.

8

Dkt. No. 12 at 9. Plaintiff does not explain "*why* or *how* [any additional] evidence would have prompted a different RFC assessment[,]" *Vasquez*, 2024 WL 4381269, at *2, nor could he reasonably make such a showing where any error inured to Plaintiff's benefit. The additional limitations provided Plaintiff a greater probability of being found disabled. "Mere speculation that [another] medical opinion could be additive to a record is not enough." *Id.* Plaintiff has not established the requisite prejudice. The undersigned magistrate judge therefore recommends that Plaintiff's first point of error be overruled.

### B. The ALJ's finding that there is a significant number of unarmed security jobs in the economy is not supported by substantial evidence.

Although not raised as a separate point of error, Plaintiff also argues that "the ALJ erred [at step five] because he failed to identify a [Dictionary of Occupational Titles (DOT)] code with corresponding significant numbers for the 'unarmed security guard' position."[5] Dkt. No. 12 at 9.

The ALJ bears the burden at step five to show that the claimant can perform other work in the national economy. *Greenspan*, 38 F.3d at 236 (citing *Bowen v. Yuckert*, 482 U.S. 137, 147 n.5 (1987)); *see also* 20 C.F.R. § 404.1520(a)(4)(v), (g). The ALJ can satisfy this burden in two ways, by: (1) "receiv[ing] testimony" from a vocational expert "or consider similar vocational resource evidence"; or (2) "consult[ing] the Grid Rules," i.e., the Medical-Vocational Guidelines (Guidelines). *Reese v. Colvin*, No. 3:14-CV-

---

[5] Although Plaintiff did not enumerate this issue as a specific point of error in his brief, as required by the Court's briefing order, he identified and briefed the issue within the body of his brief. Accordingly, the undersigned magistrate judge recommends that the district judge consider the issue sufficiently raised.

9

1779-P-BN, 2015 WL 5459538, at *4 (N.D. Tex. June 25, 2015), *R. & R. adopted sub nom.*, 2015 WL 5472832 (N.D. Tex. Sept. 17, 2015).

"The Medical-Vocational Guidelines are rules for evaluating a claimant's disability in light of functional and vocational factors." *Davis v. Astrue*, No. 4:08-CV-009-Y, 2009 WL 54258, at *2 n.2 (N.D. Tex. Jan. 8, 2009) (citing 20 C.F.R. Part 404, Subpart P, App. 2, § 200.00(a)). "[T]he Guidelines direct a finding of disability or non-disability based on the claimant's age, education, and work background." *Id.* (citing same). The ALJ can rely solely on the Guidelines if the claimant suffers only from exertional impairments or when the claimant has non-exertional impairments that do not significantly affect his residual capacity.[6] *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990); *accord* 20 C.F.R. § 404.1569. If both exertional and non-exertional impairments are present, the ALJ may apply the Guidelines only if a Guideline rule concludes that the claimant is disabled based on his exertional or strength limitations alone; otherwise, the Guidelines are used merely as a framework for further evaluation of the claimant's disability. 20 C.F.R. §§ 404.1569a(d), 416.969a(d); 20 C.F.R. Part 404, Subpart P, App. 2, § 200.00(e)(2). When the Guidelines are not directly applicable, as in this case, the Commissioner must use the services of a vocational expert or rely on similar evidence. *Fields v. Bowen*, 805 F.2d 1168, 1171 (5th Cir. 1986).

---

[6] "Limitations are classified as exertional if they affect [the claimant's] ability to meet the strength demands of jobs. The classification of a limitation as exertional is related to the United States Department of Labor's classification of jobs by various exertional levels (sedentary, light, medium, heavy, and very heavy) in terms of the strength demands for sitting, standing, walking, lifting, carrying, pushing, and pulling." 20 C.F.R. § 416.969a(a). "Limitations or restrictions which affect [the claimant's] ability to meet the demands of jobs other than the strength demands, that is, demands other than sitting, standing, walking, lifting, carrying, pushing or pulling, are considered nonexertional." *Id.*

Here, Plaintiff has both exertional and non-exertional impairments. The ALJ determined that Plaintiff has the physical residual functional capacity to perform light work "except frequent climbing of stairs and ramps, occasional climbing of ladders and scaffolding, frequent stooping, kneeling, crouching, and occasional crawling." Dkt. No. 8-1 at 19. The ALJ included additional postural, environment, and reaching limitations—non-exertional limitations—to account for the severity of Plaintiff's impairments. *Id.* at 19, 22. Because Plaintiff cannot perform substantially all the demands of light work and has non-exertional limitations, the ALJ was required to solicit information from a vocational expert to further develop the record, which he did. *See id.* at 24, 52–55.

"The primary role of a [vocational expert] is to assist an ALJ at step five in determining whether there are other jobs that the claimant could perform and whether those jobs exist in significant numbers in the national economy." *Davis v. Astrue*, 647 F. Supp. 2d 598, 601 (E.D.N.C. 2009); *see also* SSA Vocational Expert Handbook 8 (June 2024), https://www.ssa.gov/appeals/public_experts/Vocational_Experts_(VE)_Handbook-508.pdf (explaining that a vocational expert "provides both factual and expert opinion evidence based on knowledge of: . . . The existence and incidence of jobs within occupations . . . ."). "[T]he Dictionary of Occupational Titles (DOT) is typically the starting point for [vocational experts] to identify the occupations relevant for each claimant's residual functional capacities." *Wischmann v. Kijakazi*, 68 F.4th 498, 502 (9th Cir. 2023) (citation omitted). "The DOT groups jobs into 'occupations' based on their similarities and assigns each occupation a code number." *Id.* (citation omitted). "But the DOT does not provide statistical information about the number of jobs available in the

11

national economy for each occupation code." *Id.* (internal quotation marks and citation omitted). "To obtain information about the numbers of jobs, [vocational experts] look to other sources, such as the Bureau of Labor Statistics Occupational Employment Survey (OES) or the Occupational Employment Quarterly (OEQ), compiled by a private organization." *Id.*

The ALJ received testimony from vocational expert Melissa Brassfield, who answered hypotheticals. Dkt. No. 8-1 at 52–56. The hypotheticals were based on Plaintiff's age, education, work experience, and functional limitations. *Id.* The expert testified that, although Plaintiff cannot perform his past relevant work due to his limitations, he has transferrable skills and could perform the role of an unarmed security guard. *Id.* at 28, 58. Although the ALJ "determined that the vocational expert's testimony is consistent with the information contained in the DOT, except for overhead reaching," the vocational expert provided no testimony regarding the availability of unarmed security guard positions. *Id.* at 28, 58–59. And while the ALJ's opinion states that such jobs "are available in the national economy[,]" the record is silent regarding the ALJ's basis for that conclusion. *Id.* at 28–29.

The Commissioner argues that the Court should overrule Plaintiff's step-five challenge because vocational experts have testified in other cases that the security guard position exists in significant numbers. Dkt. No. 13 at 8 & n.1 (citing cases for support). But the Commissioner cites no authority showing that it is appropriate for the Court to rely on evidence adduced in other cases to determine that substantial evidence supported the ALJ's decision in *this* case. The Commissioner also contends that Plaintiff's counsel

12

should have asked the vocational expert about the number of jobs available and any failure to do so constitutes waiver. *Id.* at 8–9. But this argument ignores that it is the Commissioner's burden at step five to show the claimant can perform jobs that exist in the national economy. And the record here contains *no* information concerning the number of jobs available. Accordingly, this case differs substantially from the one cited by the Commissioner, in which a plaintiff failed to challenge a vocational expert's assertion that a particular job could be performed by a person with one arm. *See Carey v. Apfel*, 230 F.3d 131, 147 (5th Cir. 2000).

The ALJ's failure to receive evidence regarding the existence of jobs in a significant number was error. *See Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1360 (11th Cir. 2018) ("[T]he critical inquiry at step five is whether jobs exist in the national economy in significant numbers that the claimant could perform in spite of his impairments."). Because there is no record evidence regarding the number of jobs available for unarmed security guards, the ALJ's step-five decision is not based on substantial evidence. And this error is not harmless—the ALJ determined Plaintiff was not disabled despite the lack of evidence reflecting that the job of unarmed security guard exists in significant numbers in the national economy. *Morgan v. Colvin*, No. 3:15-CV-2589-L, 2016 WL 5369495, at *11 (N.D. Tex. Sept. 6, 2016) (concluding "ALJ's decision that Plaintiff could perform other jobs existing in significant numbers in the national economy" without supporting evidence constituted harmful error), *R. & R. adopted by* 2016 WL 5341305 (N.D. Tex. Sept. 23, 2016). Accordingly, the undersigned recommends the district judge remand this case. *See Adrienne W. v. Berryhill*, No. 3:17-

CV-1218-N (BT), 2018 WL 4403467, at *4 (N.D. Tex. Aug. 24, 2018) (recommending remand because there was "a lack of substantial evidence to support the Commissioner's step [five] finding that [p]laintiff could perform other work that exists in significant numbers in the national economy"), *R. & R. adopted by* 2018 WL 4386780 (N.D. Tex. Sept. 14, 2018).

### 5. Recommendation

Based on the foregoing, the undersigned magistrate judge recommends that the United States District Judge **REVERSE** the Commissioner's determination and **REMAND** the case for further administrative proceedings.

### 6. Right to Object

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2019); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding, conclusion, or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the

district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: February 6, 2025.

*Amy Burch*

AMANDA 'AMY' R. BURCH
**UNITED STATES MAGISTRATE JUDGE**

15